# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIE ANDERSON, | No. 1:15-CV-03085-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | ECF Nos. 15, 20 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 20.[1] The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 20).

---

[1] Defendant filed a motion for summary judgment. ECF No. 18. Defendant subsequently filed an amended motion for summary judgment. ECF No. 20. Accordingly, this Order addresses the amended motion (ECF No. 20).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1    gainful activity," the Commissioner must find that the claimant is not disabled.  20

2    C.F.R. § 416.920(b).

3        If the claimant is not engaged in substantial gainful activity, the analysis

4    proceeds to step two.  At this step, the Commissioner considers the severity of the

5    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6    "any impairment or combination of impairments which significantly limits [his or

7    her] physical or mental ability to do basic work activities," the analysis proceeds to

8    step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9    this severity threshold, however, the Commissioner must find that the claimant is

10   not disabled.  20 C.F.R. § 416.920(c).

11       At step three, the Commissioner compares the claimant's impairment to

12   severe impairments recognized by the Commissioner to be so severe as to preclude

13   a person from engaging in substantial gainful activity.  20 C.F.R. §

14   416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15   enumerated impairments, the Commissioner must find the claimant disabled and

16   award benefits.  20 C.F.R. § 416.920(d).

17       If the severity of the claimant's impairment does not meet or exceed the

18   severity of the enumerated impairments, the Commissioner must pause to assess

19   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20   defined generally as the claimant's ability to perform physical and mental work

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

2  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

3      At step four, the Commissioner considers whether, in view of the claimant's

4  RFC, the claimant is capable of performing work that he or she has performed in

5  the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

6  capable of performing past relevant work, the Commissioner must find that the

7  claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

8  performing such work, the analysis proceeds to step five.

9      At step five, the Commissioner considers whether, in view of the claimant's

10 RFC, the claimant is capable of performing other work in the national economy.

11 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

12 must also consider vocational factors such as the claimant's age, education and

13 past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

14 adjusting to other work, the Commissioner must find that the claimant is not

15 disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

16 other work, analysis concludes with a finding that the claimant is disabled and is

17 therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

18     The claimant bears the burden of proof at steps one through four above.

19 *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

20 step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income benefits on October 20, 2011, alleging an amended onset date of June 1, 2011.  Tr. 44-45, 269-274.  The application was denied initially, Tr. 120-123, and upon reconsideration.  Tr. 127-136.  Plaintiff appeared for a hearing before an Administrative Law Judge (ALJ) on May 14, 2013.  Tr. 43-97.  On July 5, 2013, the ALJ denied Plaintiff's claim. Tr. 20-36.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 20, 2011.  Tr. 22.  At step two, the ALJ found Plaintiff has the following severe impairments: arthralgias; obesity; diabetes mellitus; affective disorder; and anxiety disorder.  Tr. 22.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that that meets or medically equals a listed impairment.  Tr. 24.  The ALJ then concluded that Plaintiff has the RFC to perform light work, with the following additional limitations:

> Claimant can lift and carry 20 pounds occasionally and ten pounds frequently.  She can stand and walk for a total of two hours in an eight-hour workday and sit for a total of six hours in an eight-hour workday.  The claimant can never climb ladders, ropes, or scaffolds and can frequently

balance.  She can perform all other postural movements occasionally.  The claimant must avoid concentrated exposure to extreme cold or heat, vibrations, and pulmonary irritants.  She must avoid concentrated exposure to noise which means that she is capable of a moderate noise intensity level as that term is defined by the SCO.  The claimant can understand, remember, and carry out simple, repetitive tasks.  She can adapt to workplace changes as would be required of simple, repetitive task work.  The claimant can work superficially and occasionally with the general public.  She can set goals independently for simple, repetitive task work, and with these restrictions, she can complete a normal workweek without significant interruptions from her mental health symptoms.

Tr. 26-27.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 34.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are other jobs in significant numbers in the national economy that Plaintiff could perform, such as assembler, escort vehicle driver, and semiconductor bonder.  Tr. 35.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 36.

On March 31, 2015, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly found Plaintiff's psychological impairments did not meet Listing 12.04 or 12.06;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether the ALJ properly discredited Plaintiff's symptom testimony. ECF No. 15 at 4-5.

**DISCUSSION**

**A.  Listings 12.04 and 12.06**

Plaintiff faults the ALJ for failing to find at step three that her mental impairments meet Listing 12.04 (affective disorder) and 12.06 (anxiety related disorder).  ECF No. 15 at 5-9.  With respect to both listings, Plaintiff alleges the ALJ erred by failing to analyze the paragraph A criteria.

The claimant bears the burden of establishing a prima facie case of disability under the listing of impairments.  *Tackett*, 180 F.3d at 1098-99.  To "meet" a listed impairment, a claimant must establish that her condition satisfies each element of the listed impairment in question.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990): *Tackett*, 180 F.3d at 1099.  To "equal" a listed impairment, the claimant

1    "must establish symptoms, signs, and laboratory findings" at least equal in severity

2    and duration to each element of the most similar listed impairment.  *Tackett*, 180

3    F.3d at 1099-1100 (quoting 20 C.F.R. §404.1526).

4         *1. Listings 12.04 and 12.06: Paragraph A Criteria*

5         Plaintiff alleges that the ALJ erred by failing to analyze the A criteria of

6    both listings.  She alleges that she meets the A criteria for a variety of reasons,

7    including (1) diagnoses of depressive disorder and PTSD, "characterized by

8    anhedonia, anxiety, suicidality, and anger,"  ECF No. 15 at 10 (citing Tr. 414); (2)

9    an assessed GAF of 50; (3) the two symptoms of anhedonia and suicidality meet

10   the requirements of the A criteria; and (4) Plaintiff has a long, well-documented

11   history of appetite disturbances, serious weight problems, and sleep disturbance.

12   *Id.*[2]  Plaintiff misapprehends the paragraph A criteria of the step three analysis.

13

14   _____

15   [2] Plaintiff cites multiple record describing appetite and weight problems; *see, e.g.*,

16   Tr. 99, 108, 286, 364, 436, 538.  This is irrelevant because the ALJ implicitly

17   found that Plaintiff's conditions met the A criteria by finding medically

18   determinable impairments at step two.  The same is true with respect to Plaintiff's

19   extensive record cites describing sleep disturbance, sleep apnea and other sleep

20   problems.  *See, e.g.*, Tr. 63, 102, 127, 286, 301.

As noted, in order to qualify as disabled at step three of the evaluation, a claimant must meet or exceed a listed impairment in Appendix 1 to Part 404 of the regulations.  20 C.F.R. § 404.1520(d).  In order to meet a listing in Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A of the listings, which medically substantiates the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the mental disorder which are incompatible with the ability to work.  20 C.F.R, Pt. 404, Subpt. P, App. 1, § 1200(A).

Any error by the ALJ in failing to specifically address the paragraph A criteria, however, is harmless because this paragraph merely requires medically substantiating the presence of a mental disorder.  The ALJ did so by finding at step two that Plaintiff suffers from two severe, medically determinable impairments: anxiety disorder and affective disorder, Tr. 22.  *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001) (Plaintiff was diagnosed with major depression and panic disorder without agoraphobia.  "She therefore satisfies the paragraph A criteria for both affective disorders and anxiety related disorders."); *see also Evenhus v. Astrue*, 815 F. Supp. 1154, 1159-60 (D.Or. 2011) (ALJ did not err in step three analysis by discussing the B criteria of listing 12.06, anxiety disorders, after finding at step two that anxiety disorder is a severe impairment, after thoroughly examining and detailing the medical evidence of record).

1    Thus, contrary to Plaintiff's contention, the ALJ was only required to

2    determine as to each impairment whether either the B or C criteria were present.

3       *2. Listing 12.04 and 12.06: Paragraph B and C Criteria*

4    For both listing 12.04 and 12.06, meeting the B criteria requires at least two

5    of the following: marked restriction of activities of daily living; marked difficulties

6    in maintaining social functioning; marked difficulties in maintaining concentration,

7    persistence, or pace; or repeated episodes of decompensation, each of extended

8    duration.  *See* 20 C.F.R § 416.920a; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1,

9    listings 12.04 and 12.06.

10   The ALJ found that the paragraph B criteria were not met,[3] a finding that is

11   fully supported by the record.  The ALJ then properly considered the alternative

12   paragraph C criteria.  Tr. 26.  With respect to Listing 12.04, paragraph C requires

13   that the mental impairment "cause repeated, extended episodes of decompensation

14   or limit the claimant in such a way that any increase in mental demands would

15   cause such an episode of decompensation;" or a current inability to function

16   _____

17   [3]This is because the ALJ found mild restrictions in activities of daily living;

18   moderate difficulties in social functioning; moderate difficulties in concentration,

19   persistence or pace; and no episodes of decompensation.  Tr. 25-26.  Plaintiff fails

20   to demonstrate that she suffers two marked limitations.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

outside a highly supportive living arrangement going back at least one year with a

continuing need for such arrangement.  Tr. 26.  The ALJ points out that Plaintiff

did not allege she met any of the paragraph C conditions, and there is no medical

evidence substantiating this level of severity.  Tr. 26.  The ALJ is correct.  Plaintiff

cites nothing in the record that supports finding she meets the paragraph C criteria

for listing 12.04.

The paragraph C criteria of listing 12.06 requires a complete inability to

function outside of one's home.  The ALJ correctly noted that Plaintiff did not

allege an impairment reaching this level of severity, nor does any evidence support

it.  Tr. 26.

The ALJ correctly found that the paragraph B criteria are not met because

the evidence does not show at least two marked restrictions in functioning; nor

does the evidence show an extreme limitation in functioning as described in the

alternative paragraph C criteria.  Plaintiff cites numerous records in support of her

step three contention, but these are largely her own reports of functioning or

records that substantiate the undisputed paragraph A criteria.  Here, Plaintiff did

not meet her burden of producing medical evidence that establishes all of the

medical findings contained in the Listings at step three.  *See Bowen v. Yuckert*, 482

U.S. 137, 146 and n. 5 (1987).

1    **B. Medical Opinion Evidence**

2    Plaintiff faults the ALJ for discounting the opinions of treating psychiatrist

3    Moataz El Refaie, M.D.; reviewing psychologist John McRae, Ph.D.; nurse Jody

4    Gray; and examining psychologist Tae-Im Moon, Ph.D.  ECF No. 15 at 13-21.

5    There are three types of physicians: "(1) those who treat the claimant

6    (treating physicians); (2) those who examine but do not treat the claimant

7    (examining physicians); and (3) those who neither examine nor treat the claimant

8    but who review the claimant's file (nonexamining or reviewing physicians)."

9    *Holohan*, 246 F.3d at 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a

10    treating physician's opinion carries more weight than an examining physician's,

11    and an examining physician's opinion carries more weight than a reviewing

12    physician's."  *Id*.  "In addition, the regulations give more weight to opinions that

13    are explained than to those that are not, and to the opinions of specialists

14    concerning matters relating to their specialty over that of nonspecialists."  *Id*.

15    (citations omitted).

16    If a treating or examining physician's opinion is uncontradicted, an ALJ may

17    reject it only by offering "clear and convincing reasons that are supported by

18    substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

19    "However, the ALJ need not accept the opinion of any physician, including a

20    treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

Nurses and social workers are "other sources," whose opinions must be considered. 20 C.F.R. §§ 404.151, 416.913. To reject the opinion of such "other sources," the ALJ must identify germane reasons. *Molina,* 674 F.3d at 1108.

### 1. Dr. Refaie

In October 2007, Dr. Refaie completed a psychiatric summary, which listed Dr. Refaie's diagnosis, summary of medications, and summary of treatment for Plaintiff. Tr. 466. The ALJ gave "minimal weight" to the summary. Tr. 33. First, the ALJ noted that the summary was "prepared in October 2007, nearly four years prior to her alleged onset date, which gives the statement limited probative value for this analysis." Tr. 33 (citing Tr. 466). This was appropriate. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2010). Second, the ALJ found that the 2007 psychiatric summary did not contain an assessment of Plaintiff's functioning. Tr. 33 (citing Tr. 466). The ALJ did not err

in failing to specifically discuss and provide reasons for rejecting Dr. Refaie's summary in this document because the doctor did not include an assessment of any functional limitations. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where a doctor's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reason' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"); *see also Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the "mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability."). Here, the ALJ did not err in assessing the summary little weight.

With respect to later records, the ALJ gave "some weight" to Dr. Refaie's opinions. Tr. 32. For example, the ALJ noted that in January 2010, Dr. Refaie opined that the claimant "would maintain her current level of functioning with treatment, but withdrawal of treatment could cause her condition to deteriorate." Tr. 32. The ALJ found that this opinion was based on Dr. Refaie's observations as her treatment provider and is consistent with reports showing that her symptoms improved with treatment. Tr. 32.

In challenging the weight the ALJ gave Dr. Refaie's opinions, Plaintiff contends that the ALJ discounted opinions "demonstrating that these are chronic problems of long duration and are not improving with treatment," and that the

problems include "significant difficulty venturing out of the home."  ECF No. 15 at 15.  The record does not support Plaintiff's contention for several reasons.

First, Dr. Refaie's objective assessment of functioning was that Plaintiff did not have any functionally impairing symptoms.  Dr. Refaie's records consistently noted under the heading "objective" that there are *no signs* of "ongoing" functionally impairing anxiety symptoms ("including symptoms of PTSD, panic and fear of social situations"), and *no* functionally impairing depressive symptoms, after Plaintiff was seen for three visits.  Tr. 29, 336, 345, 351, 354, 360 (emphasis added).[4]  Second, Dr. Refaie repeatedly documented that Plaintiff improved with medication.  *See, e.g.,* Tr. 29, 336 (Plaintiff reports she is able to maintain attention on tasks with medication, and has no side effects); Tr. 29, 363 (Plaintiff has been responsive to medication intervention).  Third, Dr. Refaie's mental status

_____

[4] The ALJ cited to numerous records from Dr. Refaie indicating there were "no objective findings of functionally impairing anxiety symptoms ongoing."  Tr. 23, 29 (citing Tr. 348-350 (11/18/2010); Tr.  351-352 (2/3/2011); Tr. 354-355 (5/5/2011); Tr. 357-358 (8/8/2011)).  Dr. Refaie made this finding again on October 10, 2011, although it is not noted by the ALJ.  Tr. 360.  In the same records cited by the ALJ, Dr. Refaie also noted that there were no functionally impairing depressive symptoms after three visits.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

examinations were within normal limits, demonstrating normal functioning.  Tr. 29 (citing Tr. 330, 358).  Fourth, in contending that the ALJ discounted Plaintiff's problems, including "significant difficulty venturing out of the home," ECF No. 15 at 15, Plaintiff repeatedly cites to her own subjective reports to Dr. Refaie, not opinions rendered by Dr. Refaie.  For example, in support of her argument, Plaintiff cites a record indicating she reported to Dr. Refaie that she "has significant difficulty venturing out of the home."  However, that same record indicated she was a full-time student raising two children.[5]  Tr. 336.  At the same appointment, however, Dr. Refaie noted there was no objective evidence that functionally impairing anxiety symptoms were ongoing, and he observed "[n]o functionally impairing depressive symptoms after three visits."  Tr. 336.  As another example, Plaintiff cites a record in which she reported to Dr. Refaie that she "has significant difficulty venturing out of the home," but at this appointment Plaintiff "report[ed] she went camping with her family and had a great time," indicating an ability to venture out of the house.  ECF No. 15 at 15 (citing Tr.

_____

[5] Plaintiff testified that she last attended school in 2008, contrary to these records.  Tr. 47.  Because the ALJ found Plaintiff less than fully credible, the ALJ was not required to credit Plaintiff's statement, contrary to her contention at ECF No. 21 at 2-6.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

342).[6]  The ALJ was not required to credit Dr. Refaie's records of Plaintiff's reported symptoms, because the ALJ found Plaintiff less than fully credible, as discussed *infra*.

Contrary to Plaintiff's claim, the ALJ appropriately weighed Dr. Refaie's opinions.

_____

[6] Similarly, Plaintiff cites Tr. 345 (Plaintiff's difficulty leaving home is noted; at the same time, Plaintiff reports she has been feeling "in a good mood" most of the time lately, is looking forward to her kids going back to school, and has been looking for a job); Tr. 351 (same difficulty noted, yet, Plaintiff reports that "she has been enjoying her [new] job."); Tr. 354 (same difficulty noted, however, Plaintiff reports that she is currently looking for a job as an office assistant and might go to school to learn accounting if she does not find a job); Tr. 360 (same difficulty noted, but Plaintiff continues looking for a job as an office assistant); and Tr. 363 (the 2007 summary by Dr. Refaie noting continuous treatment since 10/23/2006 and that Plaintiff "has been responsive to medication intervention."). These records contradict rather than support Plaintiff's allegations of disabling limitations.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

### 2. Dr. McRae

In December 2011, Dr. McRae completed a DSHS determination. Tr. 411-415. Dr. McRae reviewed the findings of Ms. Gray, Dr. Moon, and Dr. Refaie, and concluded that Plaintiff's mental health symptoms caused marked or severe limitations of her ability to work in a public setting, maintain appropriate workplace behavior, and complete a normal workday or workweek without interruption from her symptoms. Tr. 411-412. Dr. McRae also opined that Plaintiff is limited to sedentary work. Tr. 413. Dr. McRae did not provide a specific assessment of her ability to lift, carry, stand, walk, or sit. Tr. 413.

An ALJ may reject the opinion of a non-examining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

First, the ALJ found that Dr. McRae's opinion was based on a limited review of the records. Tr. 32. It is appropriate for an ALJ to give an opinion reduced weight because the medical record reviewed lacked certain information. *See* C.F.R. §§ 404.1527(c)(4), (c)(6), 416.927 (c)(4), (c)(6) (setting forth factors for the ALJ to consider in assessing the weight of medical opinions). Here, for example, Dr. McRae did not have Dr. Burdge's examination results to review. Tr. 411.

Second, the ALJ found that Dr. McRae's opinion was inconsistent with the medical evidence as a whole.  Tr. 32-33.  An ALJ is not required to credit medical opinions that are unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, for example, the ALJ noted that Plaintiff's actual functioning on mental status testing was inconsistent with assessed marked and severe workplace limitations.  Tr. 32-33; *see* Tr. 437-438 (Dr. Moon's assessed MSE results essentially within normal limits).

Dr. McRae's opinion was contradicted by other medical evidence.  Here, Dr. McRae opined that Plaintiff is markedly or severely limited in the ability to maintain behavior in a work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms.  Tr. 412. This opinion is contradicted by examining sources, whose opinions are entitled to greater weight.  *See, e.g.*, Tr. 31 (citing Tr. 472) (examining psychologist Dr. Burdge opined, in part, that Plaintiff had *mild* limitations in the ability to maintain appropriate behavior in a work setting, and *moderate* limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms).  The ALJ appropriately gave greater weight to the opinion of examining source Dr. Burdge, Tr. 31 (citing Tr. 472), than to Dr. McRae, a reviewing source.  Tr. 32 (citing Tr. 412).  The ALJ also properly relied on other reviewing sources, including the opinion of John Gilbert, Ph.D., and Alex

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

Fischer, Ph.D., that Plaintiff's psychological symptoms are not disabling, as these sources reviewed more extensive records, including those of Dr. Burdge, than Dr. McRae. Tr. 32 (citing Tr. 103, 112).

Third, the ALJ found that Dr. McRae "did not provide specific evidentiary support for his cursory, checkbox opinions." Tr. 32. Opinions rendered on check-box forms that do not contain an explanation of the bases for the conclusion are entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions was permissible).

Moreover, the ALJ was not required to credit Dr. McRae's RFC for sedentary work since Dr. McRae is not a medical doctor. *See Holohan*, 246 F.3d at 1202 (the regulations give more weight to opinions that are explained to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists, *see id*. § 404.1527(d)(5)). Here, Dr. McRae noted that the medical evidence did not address any limitation related to physical exertion, but the ALJ assessed sedentary work limitations. Tr. 413. Even if the ALJ erred in assessing Dr. McRae's opinion, such error is harmless because the ALJ found Plaintiff can perform three different jobs that are all sedentary and within Plaintiff's RCF, including assembler, escort vehicle driver, and semiconductor bonder. Tr. 35. An error is harmless when it

1    does not affect the result.  *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007),

2    (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (finding ALJ error

3    harmless because it did not affect the result)).

4        *3. Ms. Gray*

5        In October 2011, Ms. Gray opinioned that Plaintiff was capable of

6    performing light work.  Tr. 425-426.  The ALJ gave limited weight to the

7    assessment, because it was in form of a cursory checkbox form with no

8    explanation for the opinion given.  Tr. 32.  The ALJ noted that Ms. Gray's opinion

9    was consistent with the ALJ's RFC.  Tr. 32.  In November 2011, Ms. Gray

10   evaluated Plaintiff and determined that she was limited to light activity.  Tr. 32.

11   The ALJ gave this assessment some weight, as it was based on a physical

12   examination and was consistent with her clinical findings.  Tr. 32.  Finally, in April

13   2012, Ms. Gray opined that Plaintiff could sit for most of the day, walking or

14   standing for brief periods.  Tr. 494-495.  The ALJ gave it little weight "as it

15   provided no function-by-function assessment of claimant's abilities and provides

16   little probative value."  Tr. 32.

17       Because Ms. Gray is an "other source," the ALJ was required to identify

18   germane reasons for discounting her opinions.  *Molina*, 674 F.3d at 1108.

19       The ALJ provided germane reasons for giving Ms. Gray's opinions limited

20   weight.  Opinions rendered on check-box forms that do not contain an explanation

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

1   of the bases for the conclusion are entitled to little weight.  *Crane,* 76 F.3d at 253

2   (ALJ's rejection of a check-off report that did not contain an explanation of the

3   bases for the conclusions was permissible).  Moreover, the ALJ may reject a

4   medical opinion when the opinion does not include a specific assessment of a

5   claimant's functional capacity.  *See Johnson v. Shalala*, 60 F.3d 1428, 1443 (9th

6   Cir. 1995).

7         In support of her argument that the ALJ erred in failing to credit Ms. Gray's

8   opinion, Plaintiff again cites to records documenting her own reports of pain and

9   symptomology.  ECF No. 15 at 17.[7]  Because the ALJ found Plaintiff less than

10  fully credible, as discussed *infra*, she was not required to credit Plaintiff's reports

11  to Ms. Gray.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (The ALJ

12  properly disregarded a doctor's opinion which was premised on unreliable

13  subjective complaints) (citation omitted).  Moreover, the records to which Plaintiff

14  cites are not opinions rendered by Ms. Gray; they are records documenting

15  Plaintiff's complaints.

16

17  _____

18  [7] *E.g.*, Tr. 419 (at Plaintiff's first appointment with Ms. Gray, Plaintiff describes

19  symptoms); Tr. 522 (Plaintiff describes pain as moderately severe; has had it for

20  two years).

1    Plaintiff also contends the ALJ should have credited Ms. Gray's notations

2    that Plaintiff suffered from anxiety and depressive disorder, both chronic.  ECF

3    No. 15 at 17.  In so arguing, Plaintiff cites records that include diagnostic history.

4    *See, e.g.,* Tr. 512 (list of chronic problems includes anxiety and depressive

5    disorder); Tr. 532 (same).  The ALJ found at step two that Plaintiff suffers from

6    severe mental impairments.  Tr. 22-24.  While diagnostic history is relevant to the

7    step two determination, it is not relevant to the ALJ's task of assessing functional

8    limitations.  The ALJ properly relied, in part, on the lack of assessed functional

9    limitations as a germane reason for giving Ms. Gray's April 2012 assessment little

10   weight, Tr. 32 (citing Tr. 494-495).[8]  *Molina*, 674 F.3d at 1111 (The ALJ may

11   discount testimony from "other sources" if the ALJ "'gives reasons germane to

12   _____

13   [8]Plaintiff alleges that "Ms. Gray's records actually do provide function by function

14   assessments."  ECF No. 15 at 17.  Plaintiff does not support this contention by

15   citing medical records.  Ms. Gray's April 2012 opinion cited by the ALJ, Tr. 494-

16   495, simply states that Plaintiff can sit most of the day, and walk or stand for brief

17   periods, an opinion that is consistent with the assessed RFC.  Plaintiff states that

18   "none of the records the ALJ relies on provide detailed function by function

19   assessments," ECF No. 15 at 17, but this is incorrect.  *See, e.g.,* Tr. 31-32; Tr. 472

20   (Dr. Burdge offered a functional assessment).

each witness for doing so.'" (citation and quotation omitted)).   Significantly,

Plaintiff has not identified a functional limitation assessed by Ms. Gray that is not

incorporated into the RFC.

Plaintiff faults the ALJ for failing to follow up to find out the basis of Ms.

Gray's October 2011 opinion, Tr. 425, since the ALJ noted this opinion was in the

form of a check-box form with no explanation for the opinions given.  Plaintiff is

mistaken.  An ALJ's duty to conduct an appropriate inquiry to determine the basis

for a doctor's opinion is not triggered when the opinion is offered, as here, by a

non-acceptable source.  Nor is it triggered unless the record is ambiguous or is

inadequate to allow for proper evaluation of the evidence.  *Tonapetyan,* 242 F.3d at

1150 (citation and quotation omitted).  None apply here.

### 4.  *Tae-Im Moon, Ph.D.*

In October 2011, Dr. Moon examined Plaintiff and opined that she had

marked limitations in her ability to work in a public setting and maintain

appropriate workplace behavior.  Tr. 434-438.  The ALJ gave minimal weight to

Dr. Moon's opinion.  Tr. 33.  Because Dr. Moon's opinion was contradicted, the

ALJ was required to provide specific, legitimate reasons for rejecting it.  *Bayliss,*

427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831).

First, the ALJ rejected Dr. Moon's opinion because Plaintiff's presentation

at Dr. Moon's evaluation was not consistent with the observations of other

treatment providers, who noted that Plaintiff was doing well in October 2011.  Tr.

33.  An ALJ need not accept a treating or examining physician's opinion if it is

inadequately supported by the record as a whole.  *See Batson,* 359 F.3d at 1195.

For example, the ALJ noted that Dr. Moon's assessed limitations are inconsistent

with Dr. Refaie's treatment record dated October 10, 2011, which indicated that

Plaintiff's mental status examination was within normal limits.  Tr. 33 (citing Tr.

361-362).

　　　Second, the ALJ's gave Dr. Moon's opinion less weight because Plaintiff

was not forthcoming about the extent of her alcohol use at this evaluation, which

gave Dr. Moon an incomplete picture of Plaintiff's mental health.  Tr. 33.  The

record supports the ALJ's finding.  *See Coffman v. Astrue*, 469 Fed. App'x 609,

611 (9th Cir. 2012) (affirming ALJ's rejection of examining psychologist's

opinion, in part, due to the fact that "plaintiff periodically concealed" his substance

abuse from providers); *Serpa v. Colvin*, 2013 WL 4480016, *8 (E.D. Wa., Aug. 19,

2013) (affirming ALJ's rejection of a physician's opinion because it was made

without knowledge of the claimant's substance abuse and narcotic-seeking

behavior).  Plaintiff told Dr. Moon that on occasion she consumed one to two cans

of beer, and sometimes one to two servings of hard liquor.  Tr. 33, 436, 489.

Plaintiff testified, however, that during this same time frame, from September 2011

through July 2012, she typically consumed a gallon of vodka a week.  Tr. 30

(citing Tr. 65-66).  The Court is not persuaded by Plaintiff's attempts to explain away these and other inconsistencies.

Third, the ALJ rejected Dr. Moon's assessment of Plaintiff's limitations because it was inconsistent with her mental status examination, which was within normal limits.  Tr. 33 (citing Tr. 437, 490).  "When confronted with conflicting medical opinions, an ALJ need not accept [even] a treating physician's opinion that is conclusory and brief and unsupported by clinical findings."  *Tonapetyan*, 242 F.3d at 1149 (citation omitted).  The ALJ provided specific, legitimate reasons for rejecting Dr. Moon's assessment of limitations.

## C. Adverse Credibility Finding

Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 15 at 21-28.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d at 834)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." Tr. 28-30.

### 1. Lack of Objective Medical Evidence

The ALJ found that Plaintiff's treatment records did not establish disabling physical or psychiatric symptoms. Tr. 28-29. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §416.929(c)(2); *see also* S.S.R. 96-7p.[9] Minimal objective evidence is a factor which may be relied upon in

[9] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016. The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's

discrediting a claimant's testimony, although it may not be the only factor. *See*

*Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

With respect to Plaintiff's alleged physical impairment, as the ALJ noted, the medical records did not show symptoms so severe that they prevent work activities within the assessed RFC. Tr. 28. For instance, in January 2010, Plaintiff appeared comfortable and expressed no physical discomfort. Tr. 29 (citing Tr. 331). In April 2011, Plaintiff reports she is "doing fine with her hip pain," and denied joint and muscle pain and swelling. Tr. 28 (citing Tr. 385). In November 2011, after onset, an examination revealed moderately reduced lumbar range of motion but was otherwise normal, with full range of motion in all other joints tested, negative straight leg raising tests, and intact balance and gait. Tr. 28 (citing Tr. 423). Spinal x-rays and MRI exams have not shown severe changes. Tr. 24, 28 (citing Tr. 396, 400). Complaints of back pain resolved within a month. Tr. 24 (citing Tr. 380-381). And, in April 2012 when Plaintiff was asked what prevented her from working, she cited COPD symptoms, sleep problems, and anxiety but did not mention back pain. Tr. 24 (citing Tr. 469). Because an ALJ may discount pain and symptom testimony based on a lack of medical evidence, as long as it is not

symptoms. S.S.R. 16-3p at *6. Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 30

the sole basis for discounting a claimant's testimony, the ALJ did not err when she found that Plaintiff's complaints exceeded and were not supported by objective and physical exam findings.

With respect to mental health related impairments, the ALJ found that mental health evaluations did not show that Plaintiff's psychiatric impairments prevented her from working. Tr. 29. Multiple examinations show Plaintiff consistently demonstrated normal functioning; treatment providers have observed symptoms inconsistent with allegedly disabling limitations; and the record shows that Plaintiff was aware medication was effective but stopped taking it, despite its improvement in her symptoms and functioning. Tr. 29-30. For example, the ALJ noted that in April 2012, Dr. Burdge evaluated Plaintiff. He described Plaintiff as cooperative, friendly, and humorous. Tr. 29 (citing Tr. 469). Functional intelligence appeared to be in the average to above-average range, testing revealed intact memory and concentration, as well as a normal fund of knowledge. Performance on Trails A and B fell within the normal range. Tr. 29 (citing Tr. 469-471). Treatment providers in January, March and November 2010 [before onset] note normal mental status examinations (MSEs), good mood, relaxed, and good eye contact, Tr. 29 (citing Tr. 330-331); Plaintiff is noted to be happy with appropriate affect, good insight and good cognition; reports is doing well with stable moods and no depressive episodes; Tr. 29 (citing Tr. 337-338); and Plaintiff

reports is in a good mood with no depressive symptoms, Tr. 29 (citing Tr. 348-349).

After onset, in August 2011, Plaintiff again showed no "no functionally impairing anxiety symptoms ongoing" and she denied feeling depressed, even though she was unemployed.  The MSE again was normal.  Tr. 29 (citing Tr. 357-358).  In October 2011, some difficulties with concentration are noted, but overall the MSE was within normal limits.  Tr. 29 (citing Tr. 437).  Similarly, no unusual anxiety or evidence of depression is noted in either March 2012, Tr. 539, or April 2013.  Tr. 29 (citing Tr. 514).  The ALJ's finding that Plaintiff's allegations of disabling mental health symptoms are inconsistent with the overall findings of treating and examining sources is supported by substantial evidence.

### 2. Lack of Compliance with Medical Treatment

The ALJ found Plaintiff's treatment efforts for physical complaints have been inconsistent, and Plaintiff has not followed the recommendations of treatment providers, indicating that her "symptoms are not as limiting as she alleges."   Tr. 28.  Failing to follow a prescribed course of medical treatment is a permissible reason for discounting Plaintiff's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (An ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility).  The ALJ identified several instances of lack of

compliance with recommended medical treatment.  Tr. 28.  First, the ALJ noted

that Plaintiff failed to follow through with a gastric bypass procedure after it was

approved, despite morbid obesity.  Tr. 28 (citing Tr. 358).  Second, Plaintiff

stopped using an inhaler for COPD because she forgot to use it.  Tr. 28 (citing Tr.

385).  She was not on medications for diabetes, indicating the condition was not

severely limiting as alleged.  Tr. 28.  Finally, Plaintiff was inconsistent in her use

of her sleep apnea machine.  Tr. 28.[10]  The ALJ noted that Plaintiff's "treatment

efforts are not what one would reasonably expect for a person with disabling

physical problems."  Tr. 28.  The ALJ properly considered Plaintiff's failure to

comply with medical treatment, since one with severe impairments would

presumably follow prescribed treatment to obtain relief.  *Smolen*, 80 F.3d at 1284.

---

[10] Plaintiff contends that the ALJ erred in relying on her inconsistent use of the

sleep apnea machine.  ECF No. 15 at 24.  The medical record states that Plaintiff

did not use her sleep apnea machine when she was homeless and unable to plug in

the machine.  Tr. 431.  The ALJ failed to consider and address this explanation.

Defendant concedes this was error.  ECF No. 20 at 23.  The Court agrees that

reliance on this fact was error, but finds it is harmless in light of the ALJ's other

cited examples of non-compliance and other properly supported reasons.  *See*

*Carmickle,* 533 F.3d at 1162-63.

### 3. Improvement with Treatment and Lack of Compliance with Mental Health Treatment

The ALJ found that Plaintiff's condition was well controlled with medication. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for benefits.). Plaintiff reported psychotropic medication significantly improved her symptoms. Tr. 29-30 (citing Tr. 330). Plaintiff also reported symptoms increased when she ran out of medication for four days, Tr. 30 (citing Tr. 333), indicating that she was aware of the effectiveness of the medication.

The ALJ noted that despite this knowledge, Plaintiff testified that she stopped taking psychotropic medication in December 2011. Tr. 30 (citing Tr. 50). The ALJ noted Plaintiff testified she stopped taking medication because she did not believe it was working and it caused intolerable side effects. However, when questioned, Plaintiff admitted that she did not report side effects to providers to attempt to resolve the issue. Tr. 30 (citing Tr. 50-51). The ALJ observed that Plaintiff's indifferent compliance with medication despite its efficacy suggested that Plaintiff's symptoms are not as severe as she alleges. Tr. 30.

Accordingly, the ALJ found Plaintiff's credibility was undermined by her "indifferent compliance with her mental health medication regimen." Tr. 30. Significantly, the ALJ noted that Plaintiff did not seek mental health treatment for

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 34

more than a year, from February 2012-2013.  Tr. 30 (citing Tr. 441).  Unexplained

failure to seek treatment provided a permissible reason for discounting Plaintiff's

credibility.  *See Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008)

(unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment is properly considered) (citation and quotation

omitted).  When Plaintiff went to Central Washington Comprehensive Mental

Health (CWCMH) on February 21, 2013, she did so because it was required by

DSHS.  Plaintiff reported that she had been out of treatment for over a year.  Tr.

30, citing Tr. 441.  This was a permissible reason for rejecting Plaintiff's

testimony.

   *4. Inconsistent Statements*

   The ALJ found that Plaintiff's credibility was undermined by her

misrepresentations and inconsistent statements regarding her homelessness and

substance abuse.  Tr. 30-31.

   An ALJ may support an adverse credibility finding by citing to

inconsistencies in the claimant's testimony, prior inconsistent statements and

general inconsistencies in the record.  *Thomas*, 278 F.3d at 958-59 (inconsistencies

in the claimant's testimony is properly considered); *Tommasetti*, 533 F.3d at 1039

(prior inconsistent statements may be considered); *Molina*, 674 F.3d at 1112 (an

ALJ may support an adverse credibility finding by citing to general inconsistencies in the record).

Here, the ALJ identified inconsistent statements Plaintiff has reported regarding her homelessness: (1) It appears that Plaintiff spends four to five days a week at her mother's home caring for her (Plaintiff's) children, although she has repeatedly asserted that she is homeless.  Tr. 30-31 (citing Tr. 55) (Plaintiff testified that she is homeless.  She stays "off and on" between her mother's house, her boyfriend's stepdaughter's house; and the houses of friends, her sponsor and people she knows in recovery); (2) Plaintiff testified that her two children are with her mother because she "ended up homeless and didn't want [her] children on the street."  Tr. 31 (citing Tr. 72); (3) Plaintiff testified that she makes meals for her children at her mother's house about four nights a week, makes sure that they are doing their homework and chores, and watches movies with them.  Tr. 31 (citing Tr. 73-75); (4) In October 2011, four months after onset, Plaintiff reported that she is separated from her partner of six years.  Tr. 30 (citing Tr. 360); and (5) Plaintiff told Dr. Burdge in April 2012 that she receives housing assistance, indicating Plaintiff had funding for a residence.  Tr. 30 (citing Tr. 469).[11]  Not noted by the ALJ, but further supporting her credibility determination, is a record three months

---

[11] The ALJ's citation is incorrect.  Plaintiff's statement to Dr. Burdge is at Tr. 468.

after onset by treating doctor Puneet Kakkar, M.D., which lists Plaintiff's

occupation as "Stay at Home Mom."  Tr. 367.

With respect to substance abuse, the ALJ noted that Plaintiff testified that

she drank alcohol daily from September 2011 through July 2012, last used

controlled substances on July 2, 2012, and has been clean since.  Tr. 30 (referring

to Tr. 65-67).  Yet, Plaintiff reported far less alcohol consumption to Dr. Moon.

Tr. 436, 489.  An ALJ may properly rely on a lack of candor with respect to

substance use when assessing credibility.  *Thomas*, 278 F.3d at 959 (finding that

lack of candor regarding substance abuse supported the ALJ's negative

conclusions about the claimant's physical description of her pain).

Plaintiff offers a different interpretation of the evidence in support of her

contention that the ALJ misconstrued Plaintiff's statements of past

methamphetamine and marijuana use.  ECF No. 21 at 6-8.  However, the

discrepancies between Plaintiff's testimony about alcohol use and her report to Dr.

Moon establish that Plaintiff was less than fully candid when reporting alcohol use,

a finding that Plaintiff does not directly challenge.  This was a clear and

convincing reason to discredit Plaintiff's testimony.

*5.  Daily Activities*

The ALJ found that Plaintiff's daily activities were inconsistent with

allegedly disabling anxiety and severe physical limitations.  Tr. 31.

1    A claimant's reported daily activities can form the basis for an adverse

2    credibility determination if they consist of activities that contradict the claimant's

3    "other testimony" or if those activities are transferable to a work setting.  *Orn,* 495

4    F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may

5    be grounds for an adverse credibility finding "if a claimant is able to spend a

6    substantial part of his day engaged in pursuits involving the performance of

7    physical functions that are transferable to a work setting.").  "While a claimant

8    need not vegetate in a dark room in order to be eligible for benefits, the ALJ may

9    discredit a claimant's testimony when the claimant reports participation in

10   everyday activities indicating capacities that are transferable to a work setting" or

11   when activities "contradict claims of a totally debilitating impairment."  *Molina*,

12   674 F.3d at 1112-13 (internal quotation marks and citations omitted).

13   Plaintiff testified that she takes the bus once or twice a week, can read a bus

14   schedule, and plan trips, Tr. 28 (citing Tr. 58), which is inconsistent with disabling

15   social anxiety.  In October 2011, about four months after the alleged onset date,

16   Plaintiff stated that she helped her friend's children get ready for school in the

17   morning, saw them off, and helped them with their homework.  Tr. 436.  She

18   enjoys cooking Mexican food.  Tr. 31 (citing Tr. 436-37).  In April 2012, Plaintiff

19   reported no difficulty tending to her personal needs, including hygiene, feeding

20   herself, managing money, shopping and household chores.  Tr. 25, 31 (citing Tr.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 38

470).  Plaintiff has reported that she is able to chair her home group 12-step

meetings.  Tr. 31 (citing Tr. 450-51, 454 ("I chair the meeting on Tuesdays")).

Plaintiff testified that she watches movies and is able to follow and understand the

plot, indicating the ability to concentrate.  Tr. 31 (citing Tr. 74-75).  The evidence

of Plaintiff's daily activities in this case may be interpreted more favorably to the

Plaintiff, however, such evidence is susceptible to more than one rational

interpretation, and therefore the ALJ's conclusion must be upheld.  *See Burch*, 400

F.3d at 679.  Here, Plaintiff's daily activities were reasonably considered by the

ALJ to be inconsistent with the Plaintiff's allegations of disabling functional

limitations.  Even assuming that the ALJ erred in relying on Plaintiff's daily

activities, any error is harmless because, as discussed in detail in this section, the

ALJ offered additional reasons, supported by substantial evidence, for the ultimate

adverse credibility finding.  *See Carmickle*, 533 F.3d at 1162-63.

### 6. *Reason for Stopping Work*

The ALJ found that Plaintiff stopped working for reasons unrelated to her

disability.  Tr. 31.  When considering a claimant's contention that she cannot work

because of her impairments, it is appropriate to consider whether the claimant has

not worked for reasons unrelated to her alleged disability.  *See Bruton v.*

*Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job

because he was laid off, rather than because he was injured, was a clear and

1  convincing reason to find him not credible); *Tommasetti*, 533 F.3d at 1040 (the

2  ALJ properly discounted claimant's credibility based, in part, on the fact that the

3  claimant's reason for stopping work was not his disability).

4      Here, the ALJ relied on the fact that in May 2011, Plaintiff stated that she

5  was going to be laid off soon "because they have no funding available."  Tr. 31

6  (citing Tr. 354); *see also* Tr. 70 (Plaintiff testified her job ended in June 2011

7  because the office "had to close").  Moreover, the ALJ noted Plaintiff's continued

8  pursuit of employment after her alleged onset date "suggests that her symptoms

9  were not as limiting as she currently alleges."  Tr. 31.

10     In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

11 several specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

12 *See Ghanim*, 763 F.3d at 1163.

### CONCLUSION

14     After review the Court finds the ALJ's decision is supported by substantial

15 evidence and free of harmful legal error.

16     **IT IS ORDERED:**

17     1.  Plaintiff's motion for summary judgment, ECF No. 15, is DENIED.

18     2.  Defendant's amended motion for summary judgment, ECF No. 20, is

19        GRANTED.

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 40

3.  Defendant's motion for summary judgment, ECF No. 18, is DENIED as

moot.

The District Court Executive is directed to file this Order, provide copies to

counsel, enter judgment in favor of defendant and **CLOSE** the file.

DATED this 13th day of September, 2016.

_S/ Mary K. Dimke_

MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE